UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLAUDIA SAMPEDRO, JESSICA
HINTON, and PAOLA CANAS,

      Plaintiffs,

v.                             Case No:   8:25-cv-00012-JLB-TGW

CLEAR BLUE SPECIALTY
INSURANCE COMPANY,

      Defendant.

_____/

**<u>ORDER</u>**

      Plaintiffs Claudia Sampedro, Jessica Hinton, and Paola Canas sue Defendant

Clear Blue Specialty Insurance Company ("Clear Blue") for breach of contract and

declaratory relief pursuant to a *Coblentz* Agreement.  (Doc. 1-2).  Plaintiffs obtained

a consent judgment against Clear Blue's insured, Tampa Silver Fox, Inc. ("Silver

Fox"), in Florida state court for misappropriation of their images and likenesses.

(*Id.* at ¶¶ 20, 31–32, 36–37).  Plaintiffs now sue Clear Blue on Silver Fox's behalf,

alleging that Clear Blue breached its insurance contract by failing to defend Silver

Fox in the underlying lawsuit.  (*Id.* at ¶¶ 2, 34–37).  Clear Blue moves for judgment

on the pleadings (Doc. 38), Plaintiffs responded (Doc. 45), and Clear Blue replied

(Doc. 52).  After careful review, the Court **GRANTS** Clear Blue's Motion for

Judgment on the Pleadings (Doc. 38).

## BACKGROUND[1]

Plaintiffs are professional models whose images and likenesses were used by Silver Fox to advertise its nightclub.  (Doc. 1-2 at ¶¶ 3–5, 10–18).  Beginning in 2019, Silver Fox displayed Plaintiffs and other models on its social-media advertisements without Plaintiffs' consent and without payment.  (*Id.* at ¶¶ 10–18).  The advertisements promoted events at the nightclub, including its "Pretty Chicks & Kicks" and "Tastee Tuesday" events, which featured alcohol specials and live DJs.  (*Id.* at ¶¶ 10, 12, 15).  Plaintiffs sued Silver Fox in Florida state court for: (1) violations of Florida Statutes, § 540.08; (2) common law invasion of privacy through misappropriation; (3) conversion; and (4) unjust enrichment.  (Doc. 1-3).  Clear Blue refused to defend Silver Fox in the state-court litigation, citing an exclusion in its insurance contract.  (Doc. 1-2 at ¶ 22).  Consequently, Silver Fox settled the lawsuit with Plaintiffs through a *Coblentz* Agreement, where Silver Fox assigned its right to sue Clear Blue for breach of contract to Plaintiffs.  (*Id.* at ¶ 34).  The Florida state court entered a final consent judgment in favor of Plaintiffs, awarding them $177,500.00.  (*Id.* at ¶ 37).  Plaintiffs then sued Clear Blue, which removed the case to federal court.  (*See* Docs. 1, 1-2).

During the time that the nightclub ran its advertisements, Silver Fox had several insurance policies with Clear Blue.  (Doc. 1-2 at ¶ 19).  Each policy included

---

[1] In ruling on a motion for judgment on the pleadings, a court must "accept as true all material facts alleged in the non-moving party's pleading" and "view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). Accordingly, this background section relies on the facts recited in Plaintiffs' Complaint. (*See* Doc. 1-2).

an identical provision defining the scope of coverage relevant to this lawsuit. (*Id.* at ¶¶ 25–29). Clear Blue was obligated to defend Silver Fox against lawsuits that arose from a "personal and advertising injury," meaning lawsuits that alleged Silver Fox "violate[d] a person's right of privacy." (*Id.* at ¶¶ 25–27; Doc. 38-1 at 48).[2] However, the insurance policies excluded from coverage personal and advertising injuries that arose from "exhibitions and related marketing." (Doc. 38-1 at 36). The "exhibitions and related marketing" exclusion ("the ERM Exclusion") is described as follows:

> (a) The creation, production, publication, performance, exhibition, distribution or exploitation of motion pictures, television programs, commercials, web or internet productions, theatrical shows, sporting events, music, promotional events, celebrity image or likeness, literary works and similar productions or work, in any medium including videos, phonographic recordings, tapes, compact discs, DVDs, memory cards, electronic software or media, books, magazines, social media, webcasts and web sites.

> (b) The conduct of individuals in shows, theatrical productions, concerts, sporting events, or any other form of exhibition.

> (c) Merchandising, advertising or publicity programs or material for the operations and material described in (a) or (b) above.

*Id.* It is this exclusion that Clear Blue relied on when it refused to defend Silver Fox from Plaintiff's underlying state-court lawsuit. (*See* Doc. 1-2 at ¶ 22; Doc. 45 at 3–4).

---

[2] In ruling on a motion for judgment on the pleadings, the court may consider documents attached to the motion if such documents are central to one or more of the claims and their authenticity is undisputed. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

Plaintiffs allege that Clear Blue breached its insurance contract by refusing to defend and indemnify Silver Fox. (Doc. 1-2 at ¶ 38–56). They seek damages and declaratory relief. (*Id.*). Clear Blue denies that it breached the insurance contract and moves for judgment on the pleadings. (Docs. 8, 38). Plaintiffs filed a response (Doc. 45), and Clear Blue replied (Doc. 52).

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (internal quotation marks omitted) (quoting *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). A motion for judgment on the pleadings is an appropriate vehicle to resolve the existence of insurance coverage when the facts are undisputed. *See, e.g.*, *IMC Prop. Mgmt. & Maint., Inc. v. Westchester Surplus Lines Ins. Co.*, 406 So. 3d 306, 307 (Fla. 3d DCA 2025); *Oxonian v. GEICO Gen. Ins. Co.*, No. 8:24-CV-1351-MSS-AAS, 2025 WL 555621, at *1 (M.D. Fla. Jan. 3, 2025).

In determining whether judgment on the pleading is appropriate, a court must accept as true all material facts alleged in the non-moving party's pleading and view those facts in the light most favorable to the non-moving party. *Perez*, 774 F.3d at 1335. Judgment on the pleadings should not be granted unless the non-

moving party cannot prove any set of facts that would entitle it to relief. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

## DISCUSSION

Clear Blue argues that judgment on the pleadings is appropriate because the ERM Exclusion absolved Clear Blue of its duty to defend and indemnify Silver Fox. (Doc. 38 at 2–4). "Under Florida law, ordinary contract principles govern the interpretation and construction of insurance policies." *L. Squared Indus., Inc. v. Nautilus Ins. Co.*, 156 F.4th 1147, 1152–53 (11th Cir. 2025) (footnote omitted) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002)). Where a contract's terms are clear and unambiguous, a court applies the plain meaning of those terms. *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1548–49 (11th Cir. 1996). However, where a contract's terms are ambiguous, the court construes the ambiguity in favor of the insured party. *Id.* An ambiguity exists only if the "ordinary rules of construction" cannot resolve the uncertainty in meaning. *See U.S. Fire Ins. Co. v. Mikes*, 576 F. Supp. 2d 1303, 1315 (M.D. Fla. 2007), *aff'd sub nom, U.S. Fire Ins. Co. v. Freedom Vill. of Sun City Ctr., Ltd.,* 279 F. App'x 879 (11th Cir. 2008). Clear Blue concedes in its Motion that Plaintiffs' underlying lawsuit alleged a "personal and advertising" injury, (Doc. 38 at 2), so the only issue before the Court is whether the ERM Exclusion applied under these facts.

Here, the ERM Exclusion unambiguously excused Clear Blue from its duty to defend Silver Fox against Plaintiffs' underlying lawsuit because Silver Fox's advertisements concerned promotional events. That is, the ERM Exclusion applies

to claims that arose from the "advertising" of an "exhibition" of "promotional events" through "any medium" including "social media." (Doc. 38-1 at 36). Here, Plaintiffs' likenesses were used by Silver Fox through its advertising of an exhibition of promotional events. (*See* Doc. 1-2 at ¶¶ 10–18). Specifically, the nightclub posted images of Plaintiffs on social media to draw attention to its promotional events, including the "Pretty Chicks & Kicks" and "Tastee Tuesday" events. (*Id.*).

Plaintiffs argue that Silver Fox's advertisements did not truly concern "promotional events" because the ERM Exclusion did not define the term and the "most reasonable" definition of a promotional event is "an 'event' thrown in furtherance of *promoting something*, *i.e.*, a movie premiere, a book launch, a charity auction." (Doc. 45 at 14–15) (emphasis in original). But, even accepting that definition as true, Silver Fox's promotional events promoted the nightclub itself through alcohol sales and DJ appearances. (*See* Doc. 1-2 at ¶¶ 10–18). Plaintiffs further argue that Clear Blue conflates the meanings of the terms "advertising" and "publicity programs." (Doc. 45 at 15–17). But this is also unavailing because each action would be exempt from coverage under subsection (c) of the ERM Exclusion. (Doc. 38-1 at 36). Accordingly, the ERM Exclusion applied, and Clear Blue was not obligated to defend or indemnify Silver Fox against Plaintiffs' underlying claims.

Plaintiffs also assert that a potential factual ambiguity over whether Plaintiffs were celebrities precludes granting judgment on the pleadings. (Doc. 45 at 8–14). The Court need not, however, address that argument because the ERM Exclusion applied based on its "promotional events" language. (*See* Doc. 38-1 at 36).

The Court also concludes that the ERM Exclusion did not cause Clear Blue's insurance coverage to become illusory.  Under Florida law, an insurance contract is illusory when an exclusion is "directly at odds" with the underlying contract, "leaving the insured to wonder which provision correctly explained the scope of [its] coverage."  *Travelers Indem. Co. of Conn. v. Richard McKenzie & Sons, Inc.*, 10 F.4th 1255, 1265 (11th Cir. 2021).  But an exclusion is "directly at odds" with the underlying contract only if the exclusion *completely* removes the coverage offered by the underlying contract.  *Id.*  A partial removal of coverage does not suffice.  *Id.* at 1265–66.

Here, there was not a complete removal of coverage.  While the ERM Exclusion limited the scope of coverage afforded to Silver Fox, coverage was still available for many types of injuries under the personal injury and advertising injury provision, as Clear Blue correctly points out.  (*See* Doc. 38-1 at 36, 48; Doc. 38 at 19–22).  In reaching this conclusion, the Court generally agrees with the United States Court of Appeals for the Fifth Circuit's well-reasoned opinion in *Princeton Excess & Surplus Lines Ins. Co. v. AH.D. Houston, Inc.*, 84 F.4th 274, 285–87 (5th Cir. 2023), which interpreted an identical exclusion under Texas law. The Court notes that Florida law is even *stricter* than Texas law on its requirement that an exclusion must completely remove coverage to render the coverage illusory. *See, e.g.*, *Travelers Indem. Co. of Conn.*, 10 F.4th at 1265–66.

Contrary to Plaintiffs' argument, the ERM Exclusion did not apply to "*all* advertisements." (Doc. 45 at 17) (emphasis in original).  Instead, it applied only to

7

those advertisements related to "the operations and material described in" subsections (a) and (b) of the ERM Exclusion.  Thus, for example, the ERM Exclusion might not have applied to an advertisement that described the nightclub's standard activities.  But, under these facts, the ERM Exclusion applied and therefore excluded Silver Fox's conduct related to its promotional events from coverage.  In final analysis, Clear Blue had no duty to defend or indemnify Silver Fox against the underlying lawsuit.

## CONCLUSION

For the reasons set forth above, Defendant Clear Blue Specialty Insurance Company's Motion for Judgment on the Pleadings (Doc. 38) is **GRANTED**.  The Clerk of Court is DIRECTED to enter judgment accordingly, terminate all pending deadlines, and close the case.

**ORDERED** in Tampa, Florida, on May 12, 2026.

_____

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE